**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CAMELBAK PRODUCTS LLC,<br><br>      Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>      Defendants. | Case No. 23-cv-00496<br><br>**Judge Matthew F. Kennelly**<br><br>**Magistrate Judge Gabriel A. Fuentes** |

**Declaration of Paul Mills**

1

## DECLARATION OF PAUL MILLS

I, Paul Mills, declare and state as follows:

1.  This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2.  I am the brand protection analyst for Vista Outdoor Inc., the parent company of Plaintiff CamelBak Products, LLC ("CamelBak" or "Plaintiff"). I am knowledgeable of or have access to business records concerning all information referenced herein, including, but not limited to, CamelBak's patents, trademarks, copyrights, other intellectual property, sales, on-line sales, advertising, marketing, media coverage, and intellectual property enforcement activities. I make this declaration from matters within my own knowledge save where otherwise stated.

3.  CamelBak is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at 2000 South McDowell, Suite 200, Petaluma, California 94954.

4.  CamelBak is an internationally recognized manufacturer, distributor and retailer of water bottles, packs, coolers, and other merchandise (collectively, the "CamelBak Products"). For over thirty years, CamelBak has marketed, advertised, promoted, distributed, and sold CamelBak Products to consumers in the United States.

5.  CamelBak Products have become enormously popular and even iconic, driven by CamelBak's arduous quality standards and CamelBak Products' unique and innovative designs. As a result, among the purchasing public, genuine CamelBak Products are instantly recognizable as such. In the United States and around the world, the CamelBak brand has

come to symbolize high quality, and CamelBak Products are among the most recognizable products in the world.

6.    CamelBak Products are distributed and sold to consumers through authorized retailers throughout the United States, including in Illinois, such as Dick's Sporting Goods, REI, and Road Runner Sports, among others. CamelBak Products are also distributed and sold to consumers via the camelbak.com website.

7.    CamelBak Products are known for their distinctive patented designs. These designs are broadly recognized by consumers. Water bottles styled after these designs are associated with the quality and innovation that the public has come to expect from CamelBak Products. CamelBak uses these designs in connection with its CamelBak Products, including, but not limited to, the following patented design, herein referred to as the "CamelBak Design."

| Patent Number | Claim | Issue Date |
|---|---|---|
| D732,392 | | June 23, 2015 |







8.  CamelBak is the lawful assignee of all right, title, and interest in and to the CamelBak Design. United States Patent No. D732,392 was lawfully issued on June 23, 2015, with named inventors Leonard John Duran and Thomas A. Moeller. Attached hereto as **Exhibit 1** is a true and correct copy of the United States Patent for the CamelBak Design.

9.  I perform and direct investigations related to Internet-based infringement for CamelBak, including investigations related to the infringement of the CamelBak Design. Our investigation shows that Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use the same product, namely a water bottle, that infringes directly and/or indirectly the CamelBak Design (the "Infringing Products"). I analyzed each of the e-commerce stores operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases") and determined that Infringing Products were being offered for sale to residents of the United States, including Illinois residents. This conclusion was reached through visual inspection of the products listed for sale on each e-commerce store, the price at which the Infringing Products were offered for sale, other features commonly associated with e-commerce stores selling infringing products, and because CamelBak has not granted a license or any other form of

permission to Defendants with respect to the CamelBak Design. In addition, each e-commerce store offered shipping to the United States, including Illinois. True and correct copies of screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 2**.

10. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Infringing Products to residents of Illinois.

11. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. CamelBak has not licensed or authorized Defendants to use the CamelBak Design, and none of the Defendants are authorized retailers of genuine CamelBak Products.

12. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

13.  E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

14.  Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Infringing Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that Defendants are interrelated.

15.  E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

16.  Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of CamelBak's enforcement. E-

commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to CamelBak.

17. Defendants are working in active concert to knowingly and willfully make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from CamelBak, have jointly and severally, knowingly and willfully made, used, offered for sale, sold, and/or imported into the United States for subsequent sale or use Infringing Products. Each e-commerce store operating under the Seller Aliases offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Infringing Products into the United States and Illinois over the Internet.

18. Monetary damages cannot adequately compensate CamelBak for ongoing infringement because monetary damages fail to address the damage to CamelBak's control over its rights in the CamelBak Design, its reputation, associated goodwill, and ability to exploit the CamelBak Design. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to CamelBak's control over its rights in the CamelBak Design, its reputation, the goodwill associated therewith, and ability to exploit the CamelBak Design by acts of infringement.

19. CamelBak's goodwill and reputation are irreparably damaged by the making, using, offering for sale, selling, or importing of goods that infringe the CamelBak Design. Moreover, brand confidence is damaged, which can result in a loss of future sales and

market share. The extent of harm to CamelBak's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

20.    CamelBak is further irreparably harmed by the unauthorized making, using, offering for sale, selling, or importing of goods that infringe the CamelBak Design because infringers take away CamelBak's ability to control the nature and quality of the Infringing Products. Loss of quality control over goods made, used, offered for sale, sold, or imported featuring the CamelBak Design and, in turn, loss of control over CamelBak's reputation is neither calculable nor precisely compensable.

21.    The making, using, offering for sale, selling, or importing of goods featuring the CamelBak Design that are not authorized, produced, or manufactured by CamelBak is likely causing and will continue to cause consumer confusion, which weakens CamelBak's brand recognition and reputation. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine CamelBak Products, resulting in a loss or undermining of CamelBak's reputation and goodwill.

22.    CamelBak is further irreparably damaged due to a loss of exclusivity. CamelBak Products are meant to be exclusive. CamelBak's extensive marketing efforts and innovative designs are aimed at growing and sustaining sales. When infringers make, use, offer for sale, sell, or import goods featuring the CamelBak Design without CamelBak's authorization, the exclusivity of CamelBak Products, as well as CamelBak's reputation, is damaged and eroded, resulting in a loss of unquantifiable future sales.

23.    CamelBak will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this the 25th day of January 2023 at Boise, Idaho.

DocuSigned by:

*Paul Mills*

3BA7BES6F5ED4SB...

Paul Mills